[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 500 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 501 
It is admitted that the defendant was a common carrier at the time of receiving the looking-glass for transportation. It is conceded also, as a matter of law, that a common carrier may limit his liability by express contract. This has been held many times within a few years past (Redfield on Carriers, § 11 etseq.; Dorr v. N.J. Steamboat Nav. Co., 11 N.Y., 486; Bissell
v. N.Y.C.R.R. Co., 25 id., 442.)
An agreement, special and limited in its character, was actually made in this instance, and under which the defendant claims exemption from liability. The plaintiff insists that he gave no authority for the making of that contract, and that he is not bound by it. This presents the first question in the case. The facts lie in a nutshell. Having purchased of Kimball 
Whittemore, a gilt mirror and frame, for the sum of $195, the plaintiff "directed that the same be well packed in a box by the said Kimball Whittemore, and delivered in good order to the Hudson River Railroad Company, for transportation by them by railroad to Fulton, N.Y., but gave the said Kimball Whittemore no other authority to contract with the carrier, or to execute the release, of which Schedule A is a copy;" The railroad company refused to receive or transport the mirror except upon the terms of the special contract. Had Kimball Whittemore authority as the agent of the plaintiff to enter into the same?
The authority to the agent was verbal, and therefore entitled to a more liberal construction than would be given to a formal written instrument. (Story on Agency, §§ 82-87, 100-103.)
The object to be attained was the transportation of the property to Fulton, and no restrictions or limitations were placed upon the means of doing it, except that it should be by the railroad of the Hudson River Company. *Page 504 
The authority thus to be construed, was to deliver the mirror to the railroad company for transportation. A delivery to a carrier for transportation imports an acceptance by the carrier for that purpose. (Redfield on Carriers, § 95 and following.) The consent of the carrier to receive is as necessary to the completion of a delivery, as is the consent of a grantee in a deed to the delivery of the deed. In neither case can the obligation or the advantage be thrust upon a person without his assent. An authority to deliver for transportation could only be executed by obtaining the consent of the carrier to receive the same. A carrier is not liable for the value of property until he has received the same for transportation, either in fact or in construction of law. If he arbitrarily and illegally refuses to accept the property he may be liable in damages for a breach of his duty, but not as a carrier for the value. (39 N.Y.R., 34.)
Kimball Co. were authorized, then, to carry this mirror to the starting point of the Hudson River road, and to procure its acceptance by that road for the purpose of being transported to Fulton. This authority must be construed to include all the necessary and usual means of carrying it into effect. In Redfield on the Law of Railways it is said: "As a general rule, the agent to whom the owner intrusts the goods for delivery must be regarded as having authority to stipulate for the terms of transportation." (1 Red. Railways, 22, citing London v.N.W.R.W. Co., 7 H. N., 600; Lewis v. G.W.R.W.,
5 id., 867.) This is in accordance with the general principle. Numerous instances of this character are collected in Story on Agency. Thus, a general authority to collect, receive and pay debts, will authorize settling accounts, adjusting disputed claims, resisting unjust claims, answering or defending suits, as incident to and included in the primary power. (§ 58.) An authority to collect a debt will authorize an arrest of the debtor. An authority to a broker to effect a policy will authorize him to adjust a loss, and to adopt all necessary means to procure an adjustment. An authority to settle losses *Page 505 
on a policy will include a power to refer the matter to arbitration. An authority to sell and convey lands for cash includes an authority to receive the purchase-money. (Id.) An agent who is employed to procure a note to be discounted may, unless expressly restricted, indorse it in the name of his employer, or he may indorse it in his own name, and claim indemnity of his principal. A servant or agent employed to sell, without express restriction as to mode, may sell by sample or with warranty. (§ 59.) Such an authority also includes not only the means necessary and proper, but all the various means which are justified by the usage of trade, thus authorizing a sale upon credit when that mode of sale is justified by the usage of trade. (§ 60.) In other words, the agent is clothed with full authority to use all the usual and appropriate means to accomplish the end, unless a more restricted authority is established. (§§ 73, 102, 103.)
These principles amply justify the authority to make the contract in question by Kimball Whittemore on behalf of the plaintiff. They were directed to deliver the mirror to the carrier. This required them to procure an acceptance of the article by the company. They were directed in effect to procure "its transportation to Fulton by the railroad company." This could only be accomplished by entering into a contract that it should be transported upon an open carriage, where it was exposed to unusual hazard of injury, and upon specified terms of liability. The mirror must remain uncarried by the Hudson River Company, or this arrangement must be made. The plaintiff's authority was general, and was unrestricted. In my judgment, the contract made, to wit, that it might be shipped upon an open carriage, and that the carrier should not be responsible for any breakage thereof, was within the agent's authority, and is obligatory upon the plaintiff.
It is said in further objection to the right of recovery, that the agreement was without consideration, and for that reason is void. This argument is based upon that section of the statute (§ 36, Laws 1850, chap. 140) which makes it the duty of a railroad company to receive and transport property "on the due *Page 506 
payment of the freight or fare legally authorized therefor." They were bound, it is said, to carry it, and there is nothing to show that the defendant could or would have charged a higher price if the property had been transported in a covered carriage. This argument is based upon the assumption that the defendant was bound to carry this mirror at a rate or price fixed by law, and that the law fixed their liability, founded upon that rate or price. I do not understand that either of these assumptions are well founded. The statute fixes no rate of fare, either for mirrors or non-perishable property; for goods carried in covered cars or in open cars. The whole thing is a matter of contract. The company can fix any reasonable rates they think proper, and vary them at pleasure. They received the mirror in question for transportation over their road; they were bound so to transport it; if they failed to deliver it uninjured, they were liable, or not, according as the injury was or was not the result of causes for which they agreed to be liable. The undertaking to carry was the consideration for the agreement of the shipper, as the liability of the shipper to pay the freight was the consideration for the agreement of the carrier to transport. There was a mutual and sufficient consideration; the same that exists in the ordinary case of shipment of goods with or without a special contract.
Without intending to weaken any other ground of defence, by not alluding to it, I am content to place my judgment upon the grounds stated. The plaintiff recovered the full value of his mirror, notwithstanding the injury to it accrued from a cause for which it was expressly stipulated that the defendant should not be liable. This was error.
There should be a new trial, with costs to abide the event.